1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3
- - - - - - - - - - - - - -X
4    UNITED STATES OF AMERICA              20-CR-6093(G)

5    vs.
                                          Rochester, New York
6    FRANK SALERNO,                        October 8, 2020
                   Defendant.             10:01 a.m.
7    - - - - - - - - - - - - - -X

8

9                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE FRANK P. GERACI, JR.
10                 UNITED STATES DISTRICT CHIEF JUDGE

11

12                         JAMES P. KENNEDY, JR., ESQ.
                           United States Attorney
                           BY: KYLE P. ROSSI, ESQ.
13                         Assistant United States Attorney
                           500 Federal Building
14                         Rochester, New York 14614

15
                           MARIANNE MARIANO, ESQ.
16                         Federal Public Defender
                           BY: JEFFREY CICCONE, ESQ.
17                         Assistant Federal Public Defender
                           28 East Main Street, Suite 400
18                         Rochester, New York 14614
                           Appearing on behalf of the Defendant
19

20
     ALSO PRESENT:         Erin Wong, U.S. Probation Office
21

22

23   COURT REPORTER:       Christi A. Macri, FAPR-RMR-CRR-CSR(NY/CA)
                           Christimacri50@gmail.com
24                         Kenneth B. Keating Federal Building
                           100 State Street, Room 2120
25                         Rochester, New York 14614

1                   **P R O C E E D I N G S**

2                   *          *          *

3              (**WHEREUPON**, the defendant is present).

4              **THE COURT:** Good afternoon.

02:10:26PM 5   **THE CLERK:** This is 20-CR-6093, United States of

6    America vs. Frank Salerno.

7              Kyle Rossi is here on behalf of the Government.

8              Jeff Ciccone on behalf of the defendant.

9              Erin Wong is here from Probation.

02:10:42PM 10  This matter is on for sentencing.

11             **THE COURT:** Good afternoon.  Are you Frank Salerno?

12             **THE DEFENDANT:** Yes, Your Honor.

13             **THE COURT:** Mr. Salerno appears with his attorney

14   Mr. Ciccone.  Mr. Rossi appears on behalf of the Government.

02:10:55PM 15  The Court does have the presentence report; also

16   have a statement by the Government; statement by the

17   defendant, including a letter of reference and a statement

18   written by the defendant.

19             There are objections filed by the defense,

02:11:13PM 20 specifically a two level upward adjustment for sexual contact.

21   Do you want to be heard on that?

22             **MR. CICCONE:** Judge, I mean, I'm not going to repeat

23   what's in our papers.  Obviously the argument just boils down

24   to whether the enhancement should apply.  The Second Circuit

02:11:35PM 25 hasn't decided it yet.  And courts, frankly, kind of go both

1  ways.  So my argument is that you should follow the example of

2  courts that have said that this does not qualify for the

3  enhancement for the commission of a sex act.

4          **THE COURT:** Okay.  Mr. Rossi?

02:11:51PM 5          **MR. ROSSI:** Judge, pursuant to *Lawlor* -- I did not

6  pick up on the enhancement or even the potential for it.  So

7  pursuant to *Lawlor*, I would prefer to remain silent with

8  respect to it.

9          No matter how the Court resolves that, I would -- I

02:12:03PM 10  don't think that the increased sentence range that would

11  result as a result of application of the points is warranted

12  here.  I would ask that the Court impose a sentence consistent

13  with the terms of the plea agreement, and specifically

14  consider the guidelines that are set forth in the plea

02:12:20PM 15  agreement, not the elevated guidelines that are within the

16  presentence report.

17          **THE COURT:** Okay, thank you.

18          Regarding the plea agreement, the plea agreement

19  did come to a determination that the total offense level

02:12:36PM 20  should be 33.  With a criminal history category III results in

21  a sentencing range of 168 to 210 months imprisonment.

22          Probation has determined a two level additional

23  adjustment upward for sexual contact pursuant to guideline

24  2G2.1(b)(2)(A), which calls for a two level upward adjustment

02:13:15PM 25  for the commission of a sex act or sexual contact.

1          The defense has argued that it does not apply in

2    this case.  Specifically we're talking about an act of

3    masturbation by the victim at the encouragement of the

4    defendant in this case.

02:13:36PM 5          And as Mr. Ciccone indicated, there is conflicting

6    case law in different circuits.  Third Circuit versus the

7    Sixth Circuit -- excuse me, the case that they cited versus

8    the cases that were noted by the Probation Department,

9    specifically the case out of the Sixth Circuit Court of

02:14:03PM 10   Appeals, *U.S. vs. Shafer*, S-H-A-F-E-R, at 573 F.3d 267,

11   Sixth Circuit decision 2009, which indicates that the focus is

12   on the conduct of the defendant instead of on the conduct of

13   the state of mind of the victim.

14          In this case where you have an act where the

02:14:35PM 15   defendant encourages the victim to engage in active

16   masturbation for his own sexual gratification, that that would

17   be included under the definition of sexual contact for that

18   guideline.

19          And the Court in reading the decision feels that is

02:14:56PM 20   the more reasonable interpretation of that and will apply the

21   two level upward adjustment, which would then result in a

22   total offense level of 35, with a criminal history category

23   III, sentencing range would be 210 to 265 months imprisonment.

24   And obviously I'll note the objection of the defense to that

02:15:20PM 25   determination.

1          Okay.  Government want to be heard on sentencing?

2          **MR. ROSSI:** Judge, I would move sentencing.  I think

3    I just heard the Court say the guideline range would be 210 to

4    265 months.

02:15:33PM 5          **THE COURT:** Should be 210 to 240 because the maximum

6    sentence of 20 years.  I'm sorry, I did misspeak.

7          **MR. ROSSI:** Yes, Judge.  And, Your Honor, I would --

8    despite the Court's resolution of the enhanced guidelines, I

9    would still ask the Court to employ the guidelines that -- or

02:15:50PM 10   find sentencing within the guidelines that are set forth

11   within the plea agreement.

12          I have nothing further, Judge.  I think the PSR

13   accurately captures the defendant's conduct in this case.

14          **THE COURT:** Thank you.  Mr. Ciccone?

02:16:02PM 15          **MR. CICCONE:** Thanks, Judge.  Judge, I'm asking you

16   to apply a sentence below the guidelines, and I think it's

17   warranted in this case for a couple of reasons.

18          I think first that Mr. Salerno's conduct is, I

19   think, different in this case than the average case of this

02:16:17PM 20   type.  This is not a situation where Mr. Salerno was going out

21   and soliciting or initiating contact with minors.

22          He was playing a video game on his phone and the

23   victim in this case reached out to him totally unsolicited.

24   They started chatting with each other and developed a

02:16:39PM 25   relationship.  At that point Mr. Salerno didn't even know that

1  the girl was underage.

2  Now, it turned out he did figure it out later on

3  and the relationship took a turn and he acknowledges that,

4  that's why he's pled guilty.  So I don't mean to minimize the

02:16:57PM 5  eventual conduct here, but I think it is different than the

6  average case where you have to worry about a defendant who is,

7  you know, out looking for underage girls, which clearly wasn't

8  the case here.

9  Aside from that we have a situation where

02:17:12PM 10  Mr. Salerno ended the relationship before he was ever arrested

11  by agents.  Right now there's a period of time at the end

12  where he's talking to an undercover agent, obviously not

13  knowingly, but then there's a gap between when that happens

14  and when agents eventually come and arrest him.

02:17:33PM 15  And he had cut off communication at that point, you

16  know, frankly because he met his current girlfriend and just

17  ended the relationship with the online person.

18  Aside from the conduct in this case being I think a

19  little unique, Judge, we also have a situation where we have

02:17:52PM 20  someone with, you know, clearly mental health struggles.  As I

21  outlined and as the PSR gives a little more detail on,

22  Mr. Salerno was, you know, in the military, in the reserves,

23  was kind of exposed to the aftermath of the Boston marathon

24  bombing and had, you know, some struggles with that.  I think

02:18:18PM 25  there was a diagnosis of PTSD and probably some underlying

1 mental health issues as well.

2 Eventually he was medically discharged, and I think

3 certainly this is a case where we have someone who needs

4 mental health treatment.  He didn't really get the treatment

02:18:36PM 5 he needed prior to this, but I think we're in a position where

6 we can make sure that he gets the treatment that he needs.

7 Judge, I think for the combination of those

8 reasons, a sentence below the guidelines is warranted in this

9 case.

02:18:52PM 10 **THE COURT:** Thank you, Mr. Ciccone.

11 Mr. Salerno, would you like to be heard?

12 **THE DEFENDANT:** Your Honor, when the Boston marathon

13 happened, I was actually there.  I had a few friends running

14 in the race and I was supporting them, they were part of my

02:19:18PM 15 unit at that time and as part of the stuff my unit wanted us

16 to do as a lower ranking soldier at the time was to support

17 our comrades that were there.

18 So I ended up going there and, like, seeing the

19 bombs went off and watching people, like, bleed all over the

02:19:36PM 20 road and, like, ever since that time, like even to this day I

21 still wake up with nightmares.  So I don't sleep well at

22 night.

23 And like -- like even, like, walking down the

24 street I look over my shoulder.  And my fiancee at the time

02:19:54PM 25 was like I believe you have PTSD and brought it up to my

1  counselor, and he asked me and I told him everything, too,

2  what it was like.  I don't know.  Like ever since that day

3  everything has not been right to me.

4          So -- and then I met this person and we kind of

02:20:14PM 5  talked, we related a little bit and I realized I was wrong,

6  and I should have known better, but I wasn't really paying

7  attention I could say and just -- just really wasn't using my

8  head, Your Honor.

9          And now that I moved -- actually, the time gap was

02:20:33PM 10  when I was incarcerated for the assault and battery in April

11  and I came out, met my girlfriend right after I got out, and

12  right then and there we started, like, trying to have a

13  relationship.

14          And moving forward with my life, like, I was

02:20:52PM 15  working, I was doing good.  And like my girlfriend said in her

16  letter there, she was -- she bought me a shirt one day and,

17  like, I took that off my back because the lady got into a car

18  accident and I, like, helped her with it and, like, gave her

19  the shirt off my back as a bandage and, like, to stop her

02:21:14PM 20  bleeding and waited until the paramedics and the police came.

21          And basically everything was, like, going good

22  until this happened and now I kinda lost my girlfriend.  So

23  she kind of walked away from me now, and now it's kind of

24  like -- realized it's a struggle by myself, Your Honor.  And

02:21:38PM 25  that's all.

1           **THE COURT:** When was the Boston marathon bombing?

2           **THE DEFENDANT:** It was in 2013, Your Honor, April

3   2013 -- actually, April 15th, 2013, Patriot's Day.

4           **THE COURT:** How do you explain the acts after you

02:22:06PM 5   were convicted of strangulation, suffocation in 2019?

6           **THE DEFENDANT:** Well, that -- that I kind of do not

7   remember.  They were saying -- like my lawyer at the time was

8   saying I wasn't even there.  I basically wasn't -- like, I

9   walked -- the person, they said I attacked them.  I just was,

02:22:29PM 10  like, panicked at the time and I was, like, listen, whatever I

11  have to do to get out of jail I'll do it, I'll take time if I

12  have to.  And my lawyer came up with probation for two years

13  and the GPS, and that's when I moved to Pittsfield in March

14  and I moved in with my mom, my biological mom, Your Honor, and

02:22:50PM 15  that was actually going really well because I was actually

16  doing a lot of work taking care of my mom's boyfriend, who has

17  COPD, and he's on oxygen; and my mom would need rides -- need

18  to be driven to work, and I was driving her to work every

19  night.  And I'd wake up at 4:30 in the morning, pick her up

02:23:11PM 20  from where she worked, drive her back home, and then I would

21  be sleeping at home, then I go to work and then I come back

22  and drive her to work.  And it was repetitive, Your Honor.

23          **THE COURT:** Okay.  What about the incident in 2013?

24          **THE DEFENDANT:** That was like -- the story kept

02:23:40PM 25  changing, Your Honor.  I picked up on that with my lawyer and

1    I told my lawyer like this isn't true, and my lawyer -- and I

2    guess it was -- I was not sentenced for anything for that, it

3    was dropped or --

4              **THE COURT:** It was a *nolo* disposition?

02:24:01PM 5              **THE DEFENDANT:** Right.

6              **THE COURT:** Okay.  Now, obviously you've got some

7    mental health issues.

8              **THE DEFENDANT:** Yes, Your Honor.

9              **THE COURT:** What have you been doing toward that

02:24:10PM 10   end?

11             **THE DEFENDANT:** I was going to counseling, I was

12   seeing Paul Mott at the brain center in Pittsfield; and before

13   that actually I was going to the Veterans Northeast Outreach

14   Center in Haverhill and I was seeing Lieutenant Colonel Jacob

02:24:28PM 15   Bromo at the time and he was a counselor and I was actually

16   doing that also, too, as I was out on the street.

17             And I was seeing Paul Mott in Pittsfield and I was

18   going every day to my appointments and everything and I was

19   keeping up with that every day.  It was always every day at a

02:24:46PM 20   certain time.

21             **THE COURT:** Then you were arrested on this?

22             **THE DEFENDANT:** Yes, Your Honor.

23             **THE COURT:** Okay.

24             **THE DEFENDANT:** I was arrested in December.

02:24:54PM 25             **THE COURT:** Okay.  Now, when you were arrested there

1  were photos of other young girls on your phone.  What was that

2  about?

3            THE DEFENDANT: I don't know, Your Honor.  I never

4  knew they were there.  I just never really looked into my

02:25:11PM 5  phones much.  I mean, I basically worked all the time when I

6  was living on -- before that.  I was working at Old Forest,

7  plus I was with the military.  So like, I mean, I had

8  girlfriends at the time who I was -- like when I was still

9  serving and they would send me pictures and stuff of

02:25:27PM 10  themselves, but that was them.

11            THE COURT: What about young girls?

12            THE DEFENDANT: They weren't young, Your Honor, they

13  were mostly my age.

14            THE COURT: Okay.  All right, anything else you want

02:25:39PM 15  to say?

16            THE DEFENDANT: Just that I apologize for this.  I

17  definitely have learned a lesson from this and that I hope in

18  the future I can get the help that I need and I can move

19  forward and basically be a better person and actually live --

02:25:58PM 20  actually have a family and have a son or daughter because I

21  would like that.  I mean, I would love to have my own kids,

22  make them -- like do whatever, whatever they want to do to

23  support them.

24            THE COURT: Okay, thank you.

02:26:13PM 25            Regarding this matter the defendant, Frank Salerno,

1    did plead guilty to receipt of child pornography.  He's been

2    in custody some nine months and 19 days.

3              There's currently a detainer out of the State of

4    Massachusetts on a violation of probation.

02:26:32PM 5   He's a resident of Pittsfield, Massachusetts.  He's

6    31 years of age, has a high school degree, is a United States

7    citizen.

8              He did waive indictment, pled guilty to enticing a

9    minor to engage in sexually explicit conduct between July and

02:26:54PM 10  August of 2019.  It was discovered by the father of the

11   victim, a 14-year-old girl, that the defendant had been

12   communicating with this young girl by way of a cell phone

13   through conversation between the defendant and the

14   14-year-old girl of a sexual nature.

02:27:18PM 15  Initially the victim indicated she did not tell the

16   defendant her age, but later it did come out that she was a

17   young girl, under the age of 16.

18             That she did send him photographs while she was a

19   minor.  Ultimately an undercover officer got involved in

02:27:43PM 20  communicating with the defendant during the communications

21   between the defendant and this 14-year-old victim; did include

22   him encouraging her to act -- to engage in acts of

23   masturbation, to photograph those particular acts.

24             The defendant was interviewed by agents after the

02:28:07PM 25  conducting of a search warrant on his cell phone and during

1   the interview he did admit his acts with this young girl,

2   specifically communicating with her and soliciting photographs

3   of child pornography.

4           Police indicated that when they did search the

02:28:29PM 5   phone they also found photos of other young girls on his

6   phone.

7           The base offense level for this is level 32.

8           There's a two level increase for the victim being

9   between the ages of 12, but less than 16.  Specifically in

02:28:48PM 10   this case she was 14 years of age.

11           A two level increase for the use of a computer.

12           And a two level increase, as the Court previously

13   determined, that this did involve acts of sexual contact in

14   that the defendant did solicit the victim 14-year-old girl to

02:29:08PM 15   engage in an act of masturbation for his own sexual

16   gratification.

17           There's a three level downward adjustment for his

18   acceptance of responsibility.  He has accepted responsibility

19   by his plea of guilty; and also a letter he sent to the Court

02:29:25PM 20   and his statement to Probation, all resulting in a total

21   offense level of 35.

22           His criminal history category is a level III.  He

23   has a conviction for receiving stolen property in 2011.

24           Then in 2018 a conviction for strangulation and

02:29:44PM 25   suffocation, which involved an underlying attempted rape and

1   sexual abuse.  The defendant was on probation at the time of

2   that particular act.

3          There's a separate incident between those two in

4   2013.  However, that was a *nolo* plea that we previously

02:30:04PM 5   discussed.

6          The defendant indicates that he was abused by his

7   father when he was young.  He was adopted.

8          He has been engaged in mental health treatment

9   programs for both depression, PTSD; did witness the Boston

02:30:23PM 10   marathon bombing.

11          He did serve in the Army National Guard between

12   2010 and 2015.  Has been employed previously as a landscaper.

13          It appears he's had no drug use of illegal

14   controlled substances.

02:30:46PM 15          He did graduate from high school, did attend

16   special education classes.

17          Based upon a total offense level of 35 and a

18   criminal history category of III, the sentencing range under

19   the guidelines would be 210 to 240 months.

02:31:05PM 20          The plea agreement called for a sentencing range of

21   168 months to 210 months based upon the fact the parties did

22   not include a two level upward adjustment for sexual contact

23   being involved in this act.

24          Mr. Salerno, the Court has to consider a number of

02:31:27PM 25   factors in this case.  First of all, the seriousness of the

1  offense.  Obviously engaging in this type of activity with a

2  young girl, very impressionable 14-year-old girl is a serious

3  matter.

4         The second thing the Court has to consider is your

02:31:42PM 5  background, character and history.  Your history of engaging

6  in activities such as strangulation, suffocation that you pled

7  guilty to; being on probation supervision at the time is

8  obviously very concerning to this Court.

9         The Court has to consider the fact that you

02:32:03PM 10  obviously are acknowledging that you have some serious mental

11  health issues, and luckily have been engaging in treatment for

12  that and that's something that is obviously to your benefit

13  and something that the Court certainly gives you credit for.

14         But the Court has to impose a sentence not greater

02:32:23PM 15  than necessary to accomplish the purposes of sentencing, but

16  one that does deter you and others from engaging in this type

17  of activity in the future.

18         Although based upon the increase for the two level

19  adjustment for sexual contact, the guideline range would be

02:32:41PM 20  210 to 240 months imprisonment, the Court feels that that is

21  more than necessary to accomplish all the purposes of

22  sentencing.

23         Therefore, the Court is going to impose a sentence

24  with a downward departure from that guideline sentence,

02:32:59PM 25  specifically a sentence of 180 months, which does fall within

1    the previously arranged plea agreement.  The Court feels that

2    is the sentence that's sufficient, enough to recognize the

3    seriousness of the offense, consider the defendant's history,

4    not greater than necessary to accomplish purposes of

02:33:17PM 5    sentencing, will deter the defendant and others from engaging

6    in this type of activity in the future.

7              The Court does waive any cost of incarceration.

8              That's to be followed by a ten year period of

9    supervised release with a number of conditions, including that

02:33:36PM 10   the defendant not commit any federal, state or local crimes.

11             He's prohibited from possessing any firearm,

12   ammunition or dangerous device.

13             You shall not possess a controlled substance unless

14   prescribed by a physician.

02:33:53PM 15   There's no history here of substance abuse,

16   therefore, the Court is not imposing a condition of drug

17   testing.

18             However, you shall cooperate with the collection of

19   a DNA sample.

02:34:06PM 20   The defendant also shall not possess any computer,

21   data storage device, or internet capable device unless he

22   participates in the computer and internet monitoring program

23   or unless authorized by the Court or Probation.

24             The defendant must provide Probation with advanced

02:34:24PM 25   notice of any computers, automated or connected devices that

1    will be used during the term of supervision.  Probation is

2    authorized to install any application necessary to surveil all

3    activity on such computers or connected devices owned or

4    operated by the defendant.  He's required to pay the cost of

02:34:46PM 5    monitoring services.

6          Probation will be notified of any impermissible or

7    suspicious activity occurring on those devices.  As triggered

8    by such activity, the defendant shall consent and cooperate

9    with unannounced examinations of such computer equipment or

02:35:05PM 10   devices.

11          That shall include retrieval and copying of all

12   data from the computer, connected device, storage media or

13   internet.  Any such monitoring or examination shall be

14   designed to avoid any reading of privileged information or any

02:35:24PM 15   private material that is not legally or reasonably likely to

16   lead to illegal material.

17          The defendant must participate in a sex offense

18   related treatment program, follow the rules of the program.

19   Probation will supervise the details of the program and the

02:35:42PM 20   defendant's participation, including the selection of a

21   provider and a schedule.  He's not to leave treatment until

22   completion or is ordered by the Court.  He's required to

23   contribute to the cost of services rendered.

24          The defendant shall not have any deliberate contact

02:35:59PM 25   with any child under 18 years of age, excluding his biological

1    or adopted children, unless approved by Probation or the

2    Court.

3              He shall not loiter within 100 feet of school

4    yards, playgrounds, arcades, or other places primarily used by

02:36:15PM 5    children under the age of 18.

6              Probation has the discretion to authorize the

7    defendant to pick up his own children from school or other

8    functions.  However, authorization must be obtained in advance

9    from Probation or the Court.

02:36:31PM 10    To monitor the defendant's compliance with not

11   buying or subscribing to online services, the defendant shall

12   provide Probation with access to any requested personal or

13   business financial information.

14             The defendant shall register with the state sex

02:36:45PM 15   offender registration agency in any state where he may reside,

16   be employed, carry on a vocation, or be a student, provide

17   proof of the registration to Probation.

18             Probation is authorized to release information in

19   the presentence report to the New York State Board of

02:37:07PM 20   Examiners for Sex Offenders.

21             Further disclosure to the County Court to the

22   parties involved in determination of the defendant's final

23   classification is also authorized.

24             The defendant shall submit to a search of his

02:37:18PM 25   person, property, vehicle, residence upon reasonable suspicion

1 and permit confiscation of evidence or contraband discovered.

2          The defendant shall submit to a polygraph,

3 computerized voice stress analyzer, or other testing not to

4 exceed twice in a calendar year, and an additional two retests

02:37:39PM 5 per year.  The testing may include examination using a

6 polygraph, computerized voice stress analyzer, or other

7 similar device to obtain information for supervision, case

8 monitoring and treatment.

9          He shall answer the questions posed during the

02:37:56PM 10 examinations, subject to his right to challenge in a court of

11 law the use of any statements as violations of his

12 Fifth Amendment rights.  In this regard the defendant is

13 deemed not to have waived his Fifth Amendment rights by making

14 such statements.

02:38:13PM 15          The results of any polygraph, pretest and polygraph

16 examinations may be disclosed to Probation and the Court which

17 shall not be disclosed further without court order.  The

18 defendant is required to contribute to the cost of services

19 rendered.

02:38:29PM 20          The defendant shall participate in a mental health

21 treatment program, including a mental health evaluation and

22 treatment recommended.  The Probation Office will supervise

23 the details of the testing and treatment, including the

24 selection of a treatment provider and a schedule.  If

02:38:45PM 25 inpatient treatment is recommended, that must be approved by

1   the Court unless the defendant consents.  He's not to leave

2   treatment until completion or is ordered by the Court.  While

3   in treatment and taking any medications, he shall abstain from

4   the use of alcohol.  He's required to contribute to the cost

02:39:03PM 5   of services rendered.

6           The defendant does not have the ability to pay a

7   fine and, therefore, the Court is not imposing any fine in

8   this case.

9           There is a $500 special assessment pursuant to the

02:39:28PM 10   Amy, Vicky and Andy Child Pornography Victim Assistance Act of

11   2018.  The defendant shall pay installments of $25 per quarter

12   if he's in non-Unicor or Unicor grade 5; if assigned grades 1

13   through 4 in Unicor the defendant shall pay installments of

14   50% of his monthly pay.  While on supervision he shall make

02:39:53PM 15   payments in the amount of 10% of his monthly gross income.

16           The defendant shall also pay a special assessment

17   of $100, which shall be payable to the Clerk of Court.

18   Payment shall begin under the Bureau of Prisons Financial

19   Responsibility Program.

02:40:10PM 20           Finally, the defendant is to forfeit certain

21   property, and that is specifically one LG smart phone.

22           Anything further from Probation?

23           **MS. WONG:** Yes, Your Honor.  Does the Court wish to

24   impose the mandatory $5,000 Justice for Victims of Trafficking

02:40:30PM 25   Act assessment?

1          **THE COURT:** No.  The defendant is clearly indigent

2  and cannot afford to pay the mandatory $5,000 Justice For

3  Victims of Trafficking Act, and that will be waived.

4          **MS. WONG:** That's all, Your Honor.

02:40:42PM 5          **THE COURT:** Anything more from the Government?

6          **MR. ROSSI:** Judge, I would move to dismiss the

7  complaint that's pending in this case.

8          **THE COURT:** Yes, the underlying criminal complaint

9  will be dismissed.

02:40:50PM 10          **MR. CICCONE:** Judge, I'm sorry.

11          **THE COURT:** Go ahead.

12          **MR. CICCONE:** I would ask that you include a

13  recommendation that Mr. Salerno be placed as close as possible

14  to Pittsfield.

02:41:00PM 15          **THE COURT:** Massachusetts, right?

16          **MR. CICCONE:** Yes.

17          **THE COURT:** Yes, the Court will recommend that the

18  defendant be placed as close as possible to Pittsfield,

19  Massachusetts where he resides and has family and friends.

02:41:11PM 20  That can obviously assist his return to the community

21  ultimately.

22          Mr. Salerno, I do notify you of your right to

23  appeal.  In this case the Court did impose a sentence in

24  accordance with the plea agreement, therefore, you waived your

02:41:26PM 25  right to appeal or attack the sentence.  However, if there are

22

1   any other issues for appeal you need to discuss that with

2   Mr. Ciccone.

3              Do you understand that?

4              **THE DEFENDANT:** Yes, Your Honor.

02:41:33PM 5   **THE COURT:** Okay.  Just make sure you get involved

6   in as many programs, particularly mental health, as you can

7   while you're incarcerated.  That will only help your reentry

8   into the community.  Okay, good luck.

9              (**WHEREUPON**, proceedings adjourned at 2:41 p.m.)

10                    *    *    *

11                **CERTIFICATE OF REPORTER**

12

13         In accordance with 28, U.S.C., 753(b), I certify that

14   these original notes are a true and correct record of

15   proceedings in the United States District Court for the

16   Western District of New York before the Honorable Frank P.

17   Geraci, Jr. on October 8th, 2020.

18

19   S/ Christi A. Macri

20   Christi A. Macri, FAPR-RMR-CRR-CSR(CA/NY)
     Official Court Reporter

21

22

23

24

25